# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2804

_____

United States of America,                    *
                                             *
            Plaintiff - Appellee,            *
                                             *    Appeal from the United States
      v.                                     *    District Court for the Eastern
                                             *    District of Arkansas.
Celeste Akers,                               *
                                             *
            Defendant - Appellant.           *

_____

Submitted: December 7, 2006
Filed: February 9, 2007

_____

Before WOLLMAN, BYE, and MELLOY, Circuit Judges.

_____

BYE, Circuit Judge.

Celeste Akers, a former federal corrections officer, pleaded guilty to smuggling powder cocaine into a Bureau of Prisons (BOP) correctional facility in violation of 18 U.S.C. § 1791. The U. S. Sentencing Guidelines (U.S.S.G.) advisory sentencing range was 46-57 months and the district court[1] sentenced her to 46 months incarceration. On appeal, Akers argues the sentence is unreasonable. We affirm.

_____

[1]The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

# I

Akers was employed from May 2001 until June 2005 as a federal corrections officer at a BOP facility in Forrest City, Arkansas. In late 2004, the Office of the Inspector General for the Department of Justice began an investigation into reports of drug smuggling at the facility. The investigation revealed inmate Terrell Guy was communicating with Akers via a cellular telephone that had been smuggled into the facility. Telephone records documented between 350-400 calls between the cellular telephone and telephone numbers associated with Akers. When interviewed, Guy admitted contacting her in connection with a drug smuggling scheme and that she had on three occasions provided him with one pound of marijuana and on another occasion delivered one pound of marijuana and one ounce of powder cocaine. A second inmate, Ricky McNeal, was also implicated in the scheme and confirmed Akers had smuggled marijuana and cocaine into the facility. Both Guy and McNeal also told investigators they had engaged in sexual acts with her while she was a corrections officer at the facility.

Further investigation revealed Eboni Shaw, an acquaintance of McNeal's, assisted in the smuggling operation. According to Shaw, she met with Akers on three occasions and each time provided her with one pound of marijuana. Shaw stated she met with Akers a fourth time and provided her with one pound of marijuana and one ounce of powder cocaine. Shaw stated she paid Akers $1000 each time to deliver the drugs to Guy.[2]

When confronted with telephone records detailing her contacts with Guy, Akers denied any knowledge of the calls. She was later charged in a nine-count indictment

---

[2]On appeal, Akers denies she was paid $4000 or that she engaged in sexual relations with Guy or McNeal. She did not, however, object to these facts in the Presentence Investigation Report (PSI) and they are deemed admitted. See United States v. Cullen, 432 F.3d 903, 905 (8th Cir. 2006).

with four counts of introducing controlled substances into a federal correctional facility in violation of 18 U.S.C. § 1791(a)(1), four counts of accepting a bribe as a public official in violation of 18 U.S.C. § 201(b)(2)(C), and one count of making a false statement to federal investigators in violation of 18 U.S.C. § 1001(a)(2). She entered into a plea agreement with the government, agreeing to plead guilty to one count of smuggling powder cocaine into a federal correctional facility. In return, the government dismissed the remaining counts.

Section 2P1.2 of the U.S.S.G. (Providing or Possessing Contraband in Prison) requires the application of a cross-reference to § 2D1.1 when the defendant is convicted under 18 U.S.C. § 1791(a)(1) and subject to punishment under 18 U.S.C. § 1791(b)(1). Applying these sections, the district court calculated her base offense level at 26 and awarded her a three-level reduction for acceptance of responsibility. She had no prior criminal history and her adjusted offense level of 23 resulted in a Guidelines sentencing range of 46-57 months, and she does not dispute the district court's Guidelines calculations.

Akers offered no objections to the PSI but submitted a sentencing memoranda arguing the district court should vary downward from the Guidelines sentencing range based on mitigating factors and the unfair sentencing disparity between her Guidelines sentencing range and similarly situated defendants or defendants guilty of more serious offenses. After considering her arguments, the district court stated:

> For the record the court recognizes that the federal sentencing guidelines are not mandatory but advisory only. The court notes the following factors in this action that implicates or implicate the guidelines. First of all, given the fact the government has moved for a third level of credit, her total offense level is 23, her criminal history category is I. The term of imprisonment, a minimum of 46 months, maximum 57 months, supervised release not to exceed three years.

The court also notes for the record that in determining the sanction to be imposed in this matter the court has considered the nature and the circumstances of this offense. It was most disturbing given the fact that here she was working for the federal government, a prison facility where there are many defendants who need constructive assistance, and here she allegedly was a religious individual, served as a source for supplying drugs to defendants.

According to the record she made thousands of dollars or at least she received thousands of dollars regarding this drug activity. In addition the court has considered the following factors. The need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense and the need to send a message to others in society who might be inclined to indulge in similar activity, the need to show those defendants that you supplied drugs to who were serving time. That's another need.

The need to protect the public from further crimes of the defendant, the need to provide the defendant with needed medical care or other correctional treatment in a most effective manner, and the need to afford her an opportunity to enhance her judgment, educational skills, as well as vocational skills.

. . .

I will not grant your lawyer's request that I recommend that you be permitted to participate in a boot camp matter. I want them to select a facility where you can get this mental health treatment and any other assistance that you need to deal with any problems that you may have, as well as an opportunity to enhance your vocational skills.

Sent. Tr. at 5-7.

Thereafter, the district court sentenced Akers to 46 months incarceration. On appeal, she now argues the 46-month sentence is unreasonable. She contends the sentence creates an unreasonable disparity between defendants convicted of smuggling drugs into correctional facilities versus defendants convicted of selling

drugs "on the street." She further contends § 2P1.2 creates an unreasonable sentencing disparity because it treats defendants who smuggle drugs into a correctional facility more harshly than defendants who smuggle firearms or destructive devices into such facilities. Next, she argues her sentence is unreasonable because the district court did not accord proper weight to various mitigating factors. Finally, she contends the Eighth Circuit's presumption of reasonableness accorded to "within Guidelines sentences" is improper.

## II

We review the district court's application of the Guidelines de novo, United States v. Fogg, 409 F.3d 1022, 1026 (8th Cir. 2005), and the reasonableness of the sentence for an abuse of discretion, United States v. Haack, 403 F.3d 997, 1003 (8th. Cir.), cert. denied, 126 S. Ct. 276 (2005).

### A.    Sentencing Disparities

Akers contends the application of § 2P1.2 creates an unreasonable sentencing disparity between defendants convicted of smuggling drugs into federal correctional facilities and defendants convicted of selling like quantities of drugs on the street. According to her, a defendant convicted of smuggling drugs into a federal correctional facility is treated four times more harshly than a defendant convicted of selling the same quantity of drugs on the street.

The premise underlying Akers's "disparate treatment" argument is it is unreasonable to treat similarly situated defendants differently. Clearly, however, such defendants are not, in all relevant respects, similarly situated. Two defendants may be convicted of selling/delivering like quantities of drugs, but a defendant who smuggles drugs into a federal correctional facility – especially one who is a federal corrections officer – is guilty of conduct markedly different from selling drugs on the

street. Drug dealing, in all its forms, creates a serious risk of potential harm to individuals and society. When it involves smuggling drugs into a correctional facility, however, additional and unique risks of harm to inmates and corrections staff arise. For obvious reasons, the ability to control inmates and maintain order in a correctional facility is detrimentally affected when prisoners use illegal drugs. Additionally, when a corrections officer facilitates drug smuggling it negatively impacts the perception inmates and society have of corrections staff and the correctional system – thus undermining its overall ability to function effectively. Additionally, the disparity in this case between the two kinds of conduct is magnified by Akers's sexual relationship with the two inmates. Accordingly, we conclude the district court properly calculated the advisory Guidelines sentencing range under § 2P1.2. We further find the district court did not act unreasonably when it concluded Akers's conduct was more egregious than that of a dealer of drugs on the street.

Akers next contends § 2P1.2 is unreasonable because it treats defendants convicted of smuggling drugs into a federal correctional facility more harshly than defendants convicted of smuggling firearms or destructive devices into such facilities.

Under § 2P1.2 the base offense level for a defendant convicted of smuggling a firearm or destructive device into a federal correctional facility is 23. If the defendant is a corrections officer, the base offense level is increased two levels. Thus, had Akers been guilty of smuggling a firearm into the facility her base offense level would have been 25 instead of 26. According to her, smuggling firearms into prison is much more serious than smuggling drugs and inasmuch as § 2P1.2 treats the latter more harshly, its application renders her sentence presumptively unreasonable.

District courts are not authorized to alter the Guidelines, United States v. Spears, 469 F.3d 1166, 1176 (8th Cir. 2006) (en banc), and must, when determining a reasonable sentence, properly calculate the advisory sentencing range under the Guidelines, see Haack, 403 F.3d at 1002-03. Here the district court acted reasonably

-6-

when it correctly applied § 2P1.2 and accurately calculated Akers's advisory Guidelines sentencing range.

B.      Mitigating Factors

Akers next contends the district court did not afford sufficient weight to several factors which mitigate in favor of a more lenient sentence. For example, she had no history of prior crimes, had a strong employment record, was the sole source of emotional and financial support for her twelve-year-old son, presented a negligible risk of reoffending, had no history of illegal drug use, and the offense constituted aberrant behavior for someone who had otherwise lived a law abiding life.

The record demonstrates Akers presented these arguments to the district court in a sentencing memorandum and again at the sentencing hearing. The record further demonstrates the district court considered her crimes to be most serious. Of particular note, the court was disturbed by the fact she occupied a position of trust as a correctional officer while supplying illegal drugs to inmates over whom she exercised authority. The court also noted she was paid thousands of dollars for her illegal activities. Before imposing sentence, the district court considered the sentencing factors contained in 18 U.S.C. § 3553(a) and concluded the 46-month sentence was necessary to 1) reflect the seriousness of the offense, 2) promote respect for the law, 3) provide just punishment and send a message to other defendants and inmates, 4) protect the public, and 5) provide her with necessary medical or other treatment in the most effective manner. Accordingly, it is apparent the district court considered but rejected her arguments because it believed a lower sentence would not adequately reflect the goals of sentencing set forth in § 3553(a). Nothing in her arguments convinces us the district court failed to consider a relevant factor which should have received significant weight, gave significant weight to an improper or irrelevant factor, or otherwise committed a clear error of judgment. Haack, 403 F.3d at 1004.

D.     Presumption of Reasonableness

Akers's final argument is the presumption of reasonableness accorded to sentences within the Guideline range is erroneous.

This court, as well as others, has repeatedly stated that sentences within the advisory Guidelines range are presumptively reasonable.  See, e.g., United States v. Tobacco, 428 F.3d 1148, 1151 (8th Cir. 2005).  Other circuits have rejected the presumption in the belief it overemphasizes the role the advisory Guidelines play in sentencing and runs the risk of creating a de facto mandatory sentencing scheme.  See, e.g., United States v. Jimenez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006) (en banc), United States v. Crosby, 397 F.3d 103, 115 (2d Cir. 2005), United States v. Cooper, 437 F.3d 324, 331-32 (3d Cir. 2006), United States v. Webb, 403 F.3d 373, 385 n.9 (6th Cir. 2005), United States v. Diaz-Argueta, 447 F.3d 1167, 1171-72 (9th Cir. 2006).  We do not, however, draw upon a presumption of reasonableness afforded to within Guidelines sentences to affirm Akers's sentence.  As noted above, the district court properly considered and balanced the relevant sentencing factors and arrived at a sentence that is not unreasonable.

III

The judgment of the district court is affirmed.
_____

-8-